UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLAUDE V. OFFRAY, III, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>MARTIN S. GOLDMAN, *et al.*,<br><br>    Defendants. | Case No. 19-cv-3739 (CRC) |

## MEMORANDUM OPINION

New York resident Victor Offray retained a New Jersey law firm to investigate the death of his father and protect his family's interests in the disposition of the resulting estate in New Jersey. The retainer agreement with the firm was neither negotiated nor signed in the District of Columbia, and none of the firm's services were performed here. Yet, Offray has sued the firm and two of its partners in this Court for malpractice. Offray asks the Court to exercise specific personal jurisdiction over the defendants on the sole theory that they knowingly conducted business with residents of the District of Columbia—namely, Offray's wife and two children, who join him as plaintiffs in the suit even though they were not parties to the retainer agreement. Because that assertion cannot support haling out-of-state residents into this Court, and because the Offrays offer no other facts connecting the firm's services to this forum, the Court must grant the defendants' motion to dismiss the case for lack of personal jurisdiction.

### I. Background

Plaintiffs are four members of the Offray family who have sued their former lawyers at Harkavy, Goldman, Goldman & Gerstein ("HGG&G"), a New Jersey-based law firm, as well as

the firm itself.[1]  Each of the individual defendants, named partners at HGG&G, works in the firm's West Caldwell, New Jersey office and is licensed to practice law in New Jersey, New York, or both.  Am. Compl. ¶¶ 12–14.  None of them are alleged to reside or hold licenses in the District of Columbia.  Id.  In June 2017, Claude "Victor" Offray, III—a New York resident—executed a service agreement with HGG&G for legal work related to the death of his father, Claude Offray, Jr.  Id. at ¶ 16.  The three other plaintiffs (Victor's wife Patrizia and their children, Claude IV and Sharon) did not sign the agreement, but did attend several meetings with the defendants in New Jersey.  Pls.' Opp'n 2;[2] Gerstein Aff. ¶ 16.  They are residents of D.C.  Am. Compl. ¶¶ 9–11.

Plaintiffs allege that in exchange for a $100,000 fee, the firm agreed to provide legal services to the Offrays in five separate matters: (1) a civil law suit in New Jersey state court related to Claude Jr.'s will; (2) a homicide investigation into Claude Jr.'s death in New Jersey; (3) a fee arbitration and negotiation with the family's former counsel in New Jersey; (4) a search for assets in Claude Jr.'s estate related to the 2002 sale of the family business in New Jersey; and (5) the prevention of any alterations to the marital trust or will of Gloria Offray (Claude Jr.'s widow, presumably) that would alter the division of assets among Claude Jr.'s heirs in New Jersey.  Am. Comp. ¶ 19; Pls.' Opp'n 2; Renewed Mot. to Dismiss 3; Gerstein Aff. ¶ 8.

The Offrays allege that the defendants' committed malpractice in several ways.  First, they claim that HGG&G charged them to investigate Claude Jr.'s death for the possibility of a wrongful death claim, even though the statute of limitations on such a claim in New Jersey had

---

[1] Unless otherwise noted, all facts are drawn from the Amended Complaint and taken as true for the purposes of resolving the defendants' motion to dismiss.

[2] As plaintiffs failed to paginate the opposition, the Court will rely on ECF pagination.

already expired.  Compl. ¶¶ 30, 39–41.  Second, they contend that HGG&G failed to perform any work related to the fee dispute with their previous lawyers, the search for assets in Claude Jr.'s estate, or the preservation of his widow's assets.  Id. ¶¶ 31–33.  Third, the Offrays allege that HGG&G mismanaged the settlement of the state court civil suit—causing the family members to recover less money than they should have—and that the firm falsely claimed it was not hired to represent the family's interests in that action.  Id. ¶¶ 34–35.  Finally, the Offrays complain that the firm breached their fee arrangement by charging additional sums on top of the initial $100,000 payment, which they claim was a flat fee to see all five matters through to completion.  Id. ¶¶ 20, 36–38.

On February 14, 2020, the defendants moved to dismiss the complaint on three grounds: (1) that this Court lacks personal jurisdiction over them; (2) that the District of Columbia is an improper venue regardless; and (3) that plaintiffs have failed to state a claim.  When plaintiffs' deadline to oppose the motion passed, the Court ordered them to show cause in writing why the motion should not be granted as conceded under Local Civil Rule 7(b).  Minute Order (Mar. 16, 2020).  Plaintiffs' counsel responded that he had not filed the opposition due to difficulties in getting the supporting affidavits from his clients notarized.  Pls.' Response to Order to Show Cause (Mar. 23, 2020), ECF No. 8.  After reminding counsel that notarized affidavits are not required to support motions or oppositions in federal court, the Court gave plaintiffs two additional weeks, until April 6, 2020, to file their opposition.  Minute Order (Mar. 23, 2020).  That deadline, too, came and went.  Counsel belatedly moved for another extension, this time on the ground that he had suffered an unspecified illness and neither he nor anyone else in his law firm could prepare the opposition.  Pls.' Mot. for Extension of Time (Apr. 7, 2020), ECF No. 9.  The Court obliged and granted a further 10-day extension.  Minute Order (Apr. 9, 2020).  Then,

the day after that extended due date, rather than file the promised opposition, plaintiffs filed an amended complaint. The new complaint included a few additional paragraphs but failed to add any facts pertinent to the jurisdictional deficiencies identified in defendants' motion. Defendants thus renewed their motion to dismiss. With briefing on the motion finally complete, the Court concludes it lacks personal jurisdiction over the New Jersey-based defendants and, accordingly, will dismiss the case without considering the other grounds for dismissal.

## II. Legal Standards

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), plaintiffs bear the burden of "establishing a factual basis for the exercise of personal jurisdiction over the defendant." Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990). They must allege specific acts connecting the defendants with the forum. Second Amendment Found. v. U.S. Conference of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001). Conclusory allegations are insufficient. Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 42 (D.D.C. 2003). Plaintiffs need not "adduce evidence that meets the standards of admissibility reserved for summary judgment and trial; rather, [they] may rest [their] arguments on the pleadings, 'bolstered by such affidavits and other written materials as [they] can otherwise obtain.'" The Urban Inst. v. FINCON Servs., 681 F. Supp. 2d. 41, 44 (D.D.C. 2010) (quoting Mwani v. bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005)). And while the Court should resolve all factual discrepancies in the plaintiffs' favor, it is not limited to the allegations in the complaint; the Court "may receive and weigh affidavits and other relevant matter to assist in determining jurisdictional facts." Xie v. Sklover & Co., LLC, 260 F. Supp. 3d 30, 37 (D.D.C. 2017) (quoting Khatib v. All. Bankshares Corp., 846 F. Supp. 2d 18, 26 (D.D.C. 2012)).

### III. Analysis

A federal court sitting in diversity may only exercise personal jurisdiction over a defendant if a state court in the same district would have jurisdiction. See Fed. R. Civ. P. 4(k)(1). This Court therefore applies District of Columbia law in resolving questions of personal jurisdiction. Crane, 894 F.2d at 455. Plaintiffs ask the Court to assert specific personal jurisdiction over the defendants pursuant to section 13-423(a)(1) of the D.C. longarm statute, which provides that "a court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's transacting any business" here. D.C. Code § 13-423(a)(1). The Court's exercise of jurisdiction must also meet the separate requirements of constitutional due process. See Brit UW, Ltd. v. Manhattan Beachwear, LLC, 235 F. Supp. 3d 48, 54 (D.D.C. 2017) (quoting United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995)). The "transacting any business" clause of section 13-423(a)(1) has been "'given an expansive interpretation' that is 'coextensive with the due process clause.'" Xie, 260 F. Supp. 3d at 39 (quoting Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C. Cir. 2004)). As a result, the statutory and constitutional inquiries merge, and the Court need only determine whether the defendants "purposefully established 'minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice,'" Helmer, 393 F.3d at 205 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)), and whether the controversy arises from those contacts, Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) ("specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." (internal quotation marks omitted)).

Defendants establish minimum contacts satisfying the constitutional requirements of personal jurisdiction if they "enter[] into a contract that has a 'substantial connection' with the forum." Helmer, 393 F.3d at 205 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). In actions based on a contract, courts must engage in a context-specific, fact-intensive analysis of the parties' dealings because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985). Courts weigh such factors as "the parties' 'prior negotiations', the 'contemplated future consequences' of the contract, the 'terms of the contract,' and 'the parties actual course of dealing.'" Xie, 260 F. Supp. 3d at 40 (quoting Burger King, 471 U.S. at 479). Courts also must examine "where the contract was negotiated and formed as well as where contract performance was contemplated." Geier v. Conway, Homer & Chin-Caplan, P.C., 983 F. Supp. 2d 22, 32 (D.D.C. 2013) (quoting Helmer, 393 F.3d at 205).

Importantly, "a contract with a resident of a forum does not by itself establish minimum contacts with the forum." Helmer, 393 F.3d at 206. Nor is "the foreseeability of causing injury in another State . . . sufficient to establish the necessary contacts there." Collingsworth v. Drummond Co., No. 19-cv-1263, 2020 WL 2800612, at *8 (D.D.C. May. 20, 2020) (citing Burger King, 471 U.S. at 474–75); see also Walden v. Fiore, 571 U.S. 277, 290 (2014) ("Mere injury to a forum resident is not a sufficient connection to the forum."). Rather, the analysis turns on "the defendants' contacts with the forum" itself, not simply that plaintiffs reside or were injured there. Walden, 571 U.S. at 285; see also id. ("[T]he plaintiff cannot be the only link between the defendant and the forum."); Forras v. Rauf, 812 F.3d 1102, 1106 (D.C. Cir. 2016) ("The plain text of subsection (a)(1) . . . focuses on where the defendant undertook the

6

challenged (business) actions, not where the plaintiff felt the injury."). Where a contract "was 'neither made nor performed in the District, and no services were provided or to be provided here,'" the Court cannot exercise personal jurisdiction over a non-resident defendant even if some parties to the contract reside in D.C. Exponential Biotherapies, Inc. v. Houthoff Buruma N.V., 638 F. Supp. 2d 1, 7–8 (D.D.C. 2009) (quoting COMSAT Corp. v. Finshipyards S.A.M., 900 F. Supp. 515, 524 (D.D.C. 1995)).

Plaintiffs' sole argument for asserting personal jurisdiction over defendants is that the lawyers were aware that Victor Offray's wife and children lived in D.C. when they entered into the service agreement, thus knowingly causing a "consequence" here while "[availing] themselves of the benefits of conducting business with citizens of the District." Am. Compl. ¶ 4; Pls.' Opp'n 4. But as the caselaw discussed above makes clear, that contention is insufficient to establish personal jurisdiction based on a contractual relationship. See, e.g., Walden, 571 U.S. at 285; Helmer, 393 F.3d at 206. Plaintiffs have alleged no facts—beyond the residency of Victor's wife and their two children—connecting the service agreement or HGG&G's conduct to the District. They acknowledge that the individual defendants are residents of New Jersey licensed to practice law in New Jersey and New York and that Victor, the only plaintiff who executed the service agreement, is a resident of New York. Am. Compl. ¶¶ 8, 12–14. And they do not allege that the service agreement contemplated or involved rendering legal services anywhere but New Jersey. See Am. Comp. ¶ 19 (describing legal services). Moreover, one of the individual defendants has filed an uncontested affidavit indicating that neither he nor the firm solicits or transacts business in the District of Columbia, and that all the firm's work in the five matters described in the service agreement took place in New Jersey. Gerstein Aff. ¶¶ 2–8.

Based on the allegations in the complaint and the evidence before the Court, then, it is abundantly clear that the service agreement was negotiated, formed, and performed entirely outside the District of Columbia.  Nothing in the record suggests that defendants deliberately set out to do business in D.C., avail themselves of the protection of its laws, or transact any business here.  The Court therefore lacks personal jurisdiction over the defendants.  See Geier, 983 F. Supp. 2d at 33 ("When a case arises from breach of contract and there is no allegation that the contract was negotiated, entered into, performed, or breached in the District of Columbia, specific personal jurisdiction cannot be exercised in the District of Columbia on a claim arising from such a contract.").

## IV. Conclusion

For the foregoing reasons, the Court will grant defendants' Motion to Dismiss.  A separate Order will follow.

CHRISTOPHER R. COOPER
United States District Judge

Date:  June 23, 2020